UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
    Edward Parra Lopez and
    Eva Gonzales Lopez,
    Debtors.                                     No. 7-05-14734 ML

**Southwest Financial Services**
**of Las Cruces, Inc.,**
    Plaintiff,

v.                                                                   Adv. No. 06-1078 M

**Eva Gonzales Lopez f/k/a**
**Eva Gonzales Valdez, f/k/a**
**Eva G. Valdez,**
    Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Defendant's Motion for Partial Summary Judgment (the "Motion") filed on November 6, 2006 by counsel, R. "Trey" Arvizu. Doc. 22. Plaintiff's Response (the "Response") was filed on February 16, 2007 by counsel Kelly P. Albers. Doc. 34. Plaintiff, Southwest Financial Services of Las Cruces, Inc. (the "Bank") has also filed a Motion for Summary Judgment (the "Cross Motion") (Doc. 35) to which Defendant has responded ("Response to Cross Motion") (Doc. 36).

The Complaint asks the Court to declare non-dischargeable debts in the total amount of $7,702.68 plus interest owed by Defendant represented by three promissory notes (the "Notes"). In the Motion, Defendant asks for summary judgment declaring that she has no enforceable debt to the Bank and asking for dismissal of the Complaint. In the Cross Motion, the Bank argues that it is entitled to a judgment that the debt is non-dischargeable under §§ 523(a)(2) and/or (a)(4).

1

Having considered the Motion, the Response, the Cross Motion, the summary judgment evidence, the arguments of counsel and the applicable law, and being otherwise sufficiently informed, the Court will deny the Motion and grant the Cross-Motion.

Undisputed Facts

1. During 2001 Defendant and the Bank entered into a series of loan transactions. On July 5, 2001, Defendant executed a Promissory Note and Security Agreement ("Note 1") in the amount of $4,630.16. Complaint ¶ 4a, Claim 23.[1]

2. On August 31, 2001 Defendant executed a Promissory Note and Security Agreement ("Note 2") in the amount of 4,007.00. Complaint ¶ 4c, Claim 23.

3. On December 28, 2001, Defendant executed a Promissory Note and Security Agreement ("Note 3") in the amount of $6,352.86. Note 3 was used to refinance the outstanding balance of Note 2 but also represented an additional cash disbursement to Defendant. Complaint ¶ 4e; Claim 23. Currently, there is no balance due under Note 2.

4. Defendant entered into these loan transactions at the request of Joe Valdez ("Valdez"), Defendant's ex-husband and an owner and officer of the Bank. Valdez requested that she borrow the money for him and in exchange, he promised to repay the loans. Def's Dep. 1/22/07, p. 11 line 20 – p. 12 line 1.

5. The Bank issued the following loan checks to Defendant: 1) Check No. 11123 in the amount of $4,533.00; 2) Check No.11238 in the amount of $4,007.00; and 3) Check No.11739 in

---

[1] The Bank refers to Notes as Exhibits to Complaint; however no exhibits appear on the docket. The Court has referenced the Notes attached to Claim 23 filed by the Bank. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, (10th Cir. 1979) ("The proposition that a court may take judicial notice of its records and files has frequently proved useful in summary judgment proceedings."), citing 6 Moore's Federal Practice, § 56.08, pp. 56-136.

the amount of $2,423.00. Defendant took all three checks directly to the bank on which they were drawn, cashed them, and handed the proceeds to Valdez. Def's Depo. 1/22/07 p. 34, line 15 – 23; p. 36 line 9 – 21; Def's Depo. p. 37, line 23 – p. 38, line 3.[2]

      6. Defendant made no payments on the Notes. Def's Depo. p. 39, lines 16 – 18.

      7. Gene Lee is an owner and an officer of the Bank. Lee Aff. ¶ 1 (Ex. A to Response).

      8. At the time the loans to Defendant were made, it was the Bank's policy not to allow employees to make loans to themselves or to their family members. Romero Aff. ¶ 10; Lee Aff. ¶ 2. If the Bank had known that Valdez was the recipient of the proceeds of these three loans, it would not have made the loans. Lee Aff. ¶ 14.

      9. When the payments under the Notes became delinquent, Gloria Romero, an employee of the Bank, contacted Defendant to bring the delinquency current and was told by the Defendant that the loans were not her responsibility and that she should contact Valdez. Romero Aff. ¶ 8.

      10. After learning of the improper loans, a Settlement Agreement was executed on November 3, 2003 by Valdez, the Bank and Gene Lee. *See* Lee Aff. ¶ 4; Ex. A to Answer filed March 29, 2006 (Doc. 6) (the "Settlement Agreement").

      11. Exhibit A to the Settlement Agreement lists 21 loan accounts of persons to whom Valdez is accused of making sham loans. The Notes are included among the accounts listed on Exhibit A to the Settlement Agreement.

---

[2] The parties dispute the identity of the person who filled out the loan applications for the three loans at issue. Defendant states that she does not know who filled out the applications but admits that the person who did had sufficient knowledge of her accounts and financial condition. Def's Depo. 1/22/07 p. 23 lines 1 – 9. The Bank does not identify who filled out the loan applications but contends that the applications were filled out at the direction of and with the approval of Valdez.

12. The Settlement Agreement provides that Valdez is liable for the total amount of the 21 sham loans plus legal expenses is in the amount of $144,177.00.[3] Settlement Agreement ¶ 8.

13. Valdez paid the Bank $71,402.00 (the "Settlement Proceeds"), which were the proceeds from the sale of Valdez's shares of common stock in various financial institutions, including his shares of stock in the Bank.

14. The remaining balance due by Valdez under the Settlement Agreement is $72,775.00.

15. With regard to the remaining balance, the Settlement Agreement provides

> [n]otwithstanding this remaining balance due [the Bank] and Gene Lee promise, while Valdez is not in default of this Agreement, to consider, for the purposes of this Agreement, the Accounts as paid in full.

Settlement Agreement, ¶ 2.

16. In exchange, Valdez agreed *inter alia* not to compete or assist any other person or entity in competing with the Bank for three years. Settlement Agreement ¶ 2(h). Valdez also promised: 1) that all of the remaining loan records in the Bank's possession contained complete

---

[3]The Settlement Agreement states:
. . .
6) The amount due Southwest from Valdez for the total outstanding balance of the accounts ("Accounts") in question is $142,177.00, as detailed in Exhibit A of this Agreement which is attached hereto and by this reference made a part hereof.
7) Total legal expenses as of December 12, 2000 are $1,291.00.
8) The total balance due, computed as the sum of the outstanding balances as of this date, plus legal expenses, is $144,177.00.
9) Southwest desires that the total balance due be paid in full immediately.
10) Valdez claims that he is unable to pay the total balance due Southwest at this time. In reliance upon this claim Southwest agrees to the payment terms described in this Agreement.
. . .
Settlement Agreement ¶¶ 6) – 10).

and accurate information, including the correct borrowers who actually received proceeds of their loans; 2) that these loans constitute valid enforceable obligations of the respective borrowers; and 3) that all payments shown in the loan records, with the exception of payments made on the 21 identified accounts, were made by the borrowers indicated on the loan records. Settlement Agreement ¶ 3f.

17. Defendant was not a party to the Settlement Agreement. Response Ex. A Lee Aff. ¶ 4.

18. The Settlement Agreement does not indicate whether the Settlement Proceeds were to be allocated to pay off the balance of any of the 21 sham loans. Lee Aff. ¶ 12. No portion of the Settlement Proceeds have been applied to the outstanding balances on the Notes. Lee Aff. ¶ 13.

19. Valdez is in default under the Settlement Agreement. Lee Aff. ¶ 7.[4] Valdez was given written notice of this default. Lee Aff. ¶ 11. The Settlement Agreement states that the Bank would consider the 21 sham loans as paid in full only while Valdez is not in default under the terms of the Settlement Agreement. *See* Settlement Agreement ¶ 2.

20. When Defendant was asked to borrow the funds for Valdez, she was not aware that she was doing anything wrong. Def's Depo. 1/22/07 p. 28 lines 9 – 12.

## Discussion

Summary Judgment is appropriate when the pleadings, depositions, answers to

---

[4] Gene Lee states that in fall 2004 he learned of a loan and borrower not disclosed on the Settlement Agreement who signed loan documents, obtained a loan check, and endorsed the check over to Mr. Charles Gray. Lee Aff. ¶ 7. Mr. Lee states that Mr. Valdez's failure to disclose this loan, is a breach of the Settlement Agreement. Lee Aff. ¶¶ 8-9. Defendant offers no evidence to the contrary.

5

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056. When applying this standard, the Court must "'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Wolf v. Prudential Inc. Co. Of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990)). The Tenth Circuit has stated

> [w]hile the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.

*Wolf*, 50 F.3d at 796 (citations omitted).

Cross motions for summary judgment must independently satisfy the requirements of Rule 56(c). *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 998 (10th Cir. BAP 1997); *see also Renfro v. City of Emporia*, 948 F.2d 1529, 1534 (10th Cir.1991) (cross-motion for summary judgment does not relieve court of obligation to determine if genuine issue of material fact exists).

Section 523(a)(2) provides in relevant part

> (a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt –
>> . . .
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

6

Enforceable Debt

In her Motion, Defendant argues that pursuant to the Settlement Agreement, her debt is considered paid in full; therefore, there is no debt to declare non-dischargeable and this action should be dismissed. Defendant asserts that the Settlement Agreement has the effect of discharging her debt under the New Mexico statutes governing commercial paper. Defendant relies on New Mexico statute § 55-3-604, which provides

> A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (I) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing.

NMSA § 55-3-604 (emphasis added). Defendant argues that the Settlement Agreement has the effect of discharging the Notes under either part (I) and (ii) of the statute; therefore, she is released from any further responsibility to pay the Notes. However, under this provision a discharge occurs when the person entitled to enforce an instrument, here the Bank, cancels or otherwise agrees not to enforce its rights against the obligee by intentional voluntary act. *State St. Trust Co. v. Muskogee Elec. Traction Co.*, 204 F.2d 920, 922 (10th Cir. 1953) ("there can be no discharge by cancellation without an intent to wipe out or nullify the obligation, . . ."). In the Settlement Agreement, the Bank renounced rights against Valdez, not against Defendant. The Court finds that by executing the Settlement Agreement, the Bank did not intentionally renounce its rights against Defendant or voluntarily and intentionally cancel the Notes as obligations of the Defendant. *See Christensen v. Abbott*, 595 P.2d 900, 902 (Utah 1979)(describing cancellation of note by mutual agreement termed "accord and satisfaction" through settlement of parties'

respective liabilities to each other in context of parties' joint venture).

Defendant further argues that the Settlement Agreement made Valdez solely responsible for the debts listed in Exhibit A. Defendant reasons that the purpose of the Settlement Agreement was to settle or resolve all of the issues surrounding the making of the various sham loans. To accomplish this goal, according to Defendant, all of the obligations were merged into one new obligation in the amount of $144,177.00 for which Valdez was solely responsible. Defendant points out that the Settlement Agreement did not mention the loan account holders and did not state that they would remain liable on their obligations. According to Defendant, the failure to provide for the continuing liability of the account holders is a reasonable interpretation of the agreement given that the Settlement Agreement was prepared by the Bank, citing the rule that a contract should be construed against the drafter.

The Bank argues that Defendant was not a party to the Settlement Agreement; and therefore, it did not release Defendant from her obligations under the Notes. The Bank argues further that the paid in full status of the sham loans was conditioned upon Valdez performing under the Settlement Agreement. Paragraph 2 of the Settlement Agreement states that as long as Valdez is not in default under the Settlement Agreement, the accounts would be considered paid in full. Defendant asserts that even if the Settlement Agreement could have had an effect on Defendant's liability, which Defendant does not concede, it is undisputed that Valdez is in default under the Settlement Agreement because he failed to disclose one sham loan; therefore, the Notes should not be considered as paid in full.[5] The Bank also argues that the Settlement

---

[5] By failing to include the omitted sham loan from Exhibit A, Valdez breached his promise that all of the remaining loan records in the Bank's possession contained complete and accurate information and that all payments were made by the borrowers indicated in the Bank's

8

Agreement contains no specific allocation of the Settlement Proceeds to any of the specific loan accounts; therefore, Defendant's obligations are fully enforceable because no part of the funds are shown to have been used to pay off Defendant's debts.

Defendant argues that the Settlement Agreement extinguished her obligation under the Notes by substituting Valdez's promise to pay the Bank for her promise to pay the Bank pursuant to the Notes. Under contract law "an obligor may generally delegate performance of his contractual duty to another. However, neither the fact that the obligor delegates performance of a contract, nor that fact that a person contracts with the obligor to assume the duty, will discharge any duty or liability of the original obligor, unless the obligee agrees otherwise." *Security Beneficial Life Ins. Co. v. F.D.I.C.*, 804 F.Supp. 217, 225 (D. Kan. 1992) citing Restatement (Second) of Contracts § 318(1), (3) (1979). An obligor may be discharged by substitution of a new obligor only if the contract expressly provides or "if the obligee makes a binding manifestation of assent to the substitution, forming a novation."[6] *Id.* The term "novation" refers to an agreement whereby parties to a contract substitute a new agreement and extinguish an old agreement. Novation requires "(1) an existing and valid contract, (2) an agreement to the new contract by all parties, (3) a new valid contract, and (4) an extinguishment of the old contract by the new one." *Summit Properties, Inc. v. Public Service Co. Of New Mexico*, 138 N.M. 208, 218, 118 P.3d 716, 726 (N.M. App. 2005), quoting *Sims v. Craig*, 96 N.M. 33, 35, 627 P.2d 875, 877 (1981). "For a novation, 'there must be a clear and definite

---

loan records. *See* Settlement Agreement ¶ 3f.

[6] Defendant contends that the Notes were "merged" into the Settlement Agreement releasing her from liability under the Notes. This type of action is more appropriately referred to as a "novation."

9

intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principal that novation is never to be presumed.'" *Id.* quoting, *Sims*, 96 N.M. at 35, 627 P.2d at 877. Because Defendant was not a party to the Settlement Agreement and the Settlement Agreement contained no language indicating that the Bank agreed to extinguish Defendant's obligations, the Settlement Agreement neither extinguished Defendant's original obligations under the Notes nor substituted Valdez as the obligor under the Notes. *Security Beneficial*, 804 F.Supp. at 226 (holding that assumption agreement whereby one insurance company purported to assume in full the obligations under annuity policies was not a valid novation without policyholder's consent).

In addition, it is undisputed that Valdez is in default under the Settlement Agreement; therefore, under the terms of the Settlement Agreement, the obligations at issue cannot be considered paid in full. The Bank can enforce the Notes against Defendant and Defendant's Motion will be denied.

## Is The Debt Non-Dischargeable?

To declare a debt non-dischargeable under § 523(a)(2), a the Bank must show by a preponderance of evidence that "[t]he debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was [justifiable][7]; and the debtor's representation caused the creditor to sustain a loss." *Fowler Bros v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996). "False representations are 'representations knowingly and fraudulently made that give rise to the debt.'"

---

[7]*Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d. 351 (1995) changed the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable."

10

*In re Sutherland-Minor,* 345 B.R. 348, 354 (Bankr.D.Colo. 2006) (quoting *Cobb v. Lewis (In re Lewis),* 271 B.R. 877, 885 (10th Cir. BAP 2002)). False pretenses, as distinguished from false representations, "involve[] an implied misrepresentation that is meant to create and foster a false impression." *In re Bruce*, 262 B.R. 632, 636 (Bankr. W. D. Pa. 2001) (citing *In re Scarlata*, 127 B.R. 1004, 1009 (N.D. Ill. 1991)). If a creditor can show that a debtor obtained a loan while never intending to repay it, a debt can be held non-dischargeable under § 523(a)(2)(A) as a debt obtained by false pretenses. *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. BAP 1998) ("An implied representation of intent to repay will be fraudulent if the credit card issuer demonstrates that at the time the debtor used a credit card he or she had no intent to repay the debt incurred.").

In the Cross Motion, the Bank argues that the undisputed evidence is sufficient to prove all of the elements of § 523(a)(2); therefore, the debt should be declared non-dischargeable. Defendant admits that she was approached by Valdez, her ex-husband, to engage in a series of loans whereby she would obtain a loan in her name, but would immediately turn over the proceeds to Valdez, who promised to make the loan payments. *See* Def's Dep. 1/22/07, p. 11 line 20 – p. 12 line 1. In her deposition testimony, Defendant states,

> A. Joe Valdez asked me if I would borrow money for him and that he would pay the loans back. So that's what I did. . . . I borrowed that money for my ex-husband. . . I trusted him to repay the loan back. . . .

Def's Dep. 1/22/07 p. 11 line 24 – p. 12 line 1; p. 24 line 23; p. 30 line 3 – 4. The Bank argues that by signing each of the Notes and receiving the funds in her name on three occasions, with knowledge that she was acting for Valdez, Defendant fostered the false impression that she was the recipient of the loan funds and that she would repay each debt when instead, Defendant

11

intended to give the funds to Valdez and did not intend to repay each loan.

Defendant argues that even if the facts show that she misrepresented herself as the borrower and recipient of the loan proceeds, the Bank has failed to show that at the time she received the loans, she had the requisite intent to defraud, which is central to a claim for non-dischargeability under § 523(a)(2). Defendant argues that a genuine fact issue exists as to whether she intended to defraud the Bank based on her deposition testimony that at the time she entered into the loan transactions, she did not know she was doing anything wrong. *See* Def's Depo. 1/22/07 p. 28 lines 9 – 12. Defendant argues that this creates an issue of fact regarding her intent to defraud, which is a fact intensive inquiry not easily decided on summary judgment. *See Crossingham Trust v. Baines (In re Baines)*, 337 B.R. 392, 398-99 (Bankr. D. N.M. 2006) ("The issue of fraudulent intent, central to a claim for non-dischargeability under 11 U.S.C. § 523(a)(2)(A) is a material issue which is not easily subject to adjudication by summary judgment.").

The determination of whether a debtor had the requisite intent is a factual question that must be resolved by a review of all of the relevant circumstances of a particular case. *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul),* 266 B.R. 686, 694 (Bankr.N.D.Ill.2001). Proof of intent to deceive is measured by a debtor's subjective intention at the time the representation was made. *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr.N.D.Ill.1998). Alternatively, intent to deceive can be shown by logically inferring the intent to defraud. *In re Sheridan,* 57 F.3d 627, 633 (7th Cir.1995). Where a person knowingly or recklessly made false representations that the person knew or should have known would induce another to act, the court may logically infer an intent to deceive. *Glucona Am., Inc. v. Ardisson (In re Ardisson)*,

12

272 B.R. 346, 357 (Bankr.N.D.Ill.2001).

The undisputed record shows that Defendant on three occasions made false representations that she was the borrower and recipient of loan funds, and that she would repay each loan according to its terms while having no intention to do so. Each Note signed by Defendant contains a statement of the amount financed to the borrower, referred to as "you," and a schedule for payments entitled "Your Payment Schedule." Each Note contains a promise to pay the loan according to its terms. In short, by executing the Notes, Defendant represented that she was the borrower who promised to pay the loan. It is undisputed that the Bank would not have made the loan to Mr. Valdez due to its policy prohibiting loans to employees; therefore, the Bank relied on the identity of this borrower in making the loans. This reliance was justifiable because there is no evidence that the Bank should have been aware that Defendant was not the real borrower in the loan transaction. *See FDIC v. Roberti (In re Roberti)*, 201 B.R. 614, 628 (Bankr. D. Conn. 1996) (finding justifiable reliance by bank who loaned money to non-existent corporation on president's signature because bank could "justifiably assume that the defendant, as president of the corporate borrower, knew the name of that entity and was therefore justified in believing the materially false statement that the name of the intended corporate borrower was 'Westledge/Boyer Realty II, Corp.'"). As for her intent, regardless of whether Defendant thought she was not doing something wrong, Defendant concedes her part in the plan to transfer money to Valdez by inducing the Defendant into believing that she was borrowing the money. She readily admits that because Valdez would repay the loans, she had no present intention to repay the loans at the time she entered into the loan transactions. These undisputed facts support a finding of intent to induce the loans based on false representations from which the Court may

13

conclude that the debt was procured by false representations, false pretenses or actual fraud. *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002) (finding on summary judgment an intent to defraud under § 523(a)(2)(A) where debtor purchased a motorcycle on credit for her boyfriend who would not have qualified for credit finding that debtor did not intend to purchase, use or pay for the motorcycle as represented in the financing documents). In the same manner as the debtor in *Dobek*, the Court can infer that the Defendant intended to trick the Bank into believing it was contracting with her, when she was "simply a nominal party to the transaction." *Id.* Defendant's self-serving statement is not sufficient to rebut her admitted knowledge that she was falsely representing herself as borrower to the Bank with intent that the Bank make the loan and without the present intent to repay. The debt is non-dischargeable under § 523(a)(2)(A).

Because the debt is excepted from discharge pursuant to this section, the Court will not address the Bank's alternate claim of non-dischargeability pursuant to § 523(a)(4).

An appropriate judgment will be entered in accordance with this Memorandum Opinion.

_____
MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

Copies to:
Kelly Albers
Attorney for The Bank
650 Montana Ave Ste D
Las Cruces, NM 88001-4294

R. Trey Arvizu, III
Attorney for Defendant
PO Box 1479
Las Cruces, NM 88004-1479

14