# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: EDWARD PARRA LOPEZ and
EVA GONZALES LOPEZ,

No. 7-05-14734 ML

Debtors.

---

SW FINANCIAL SERVICES OF LAS CRUCES, INC.,

    Plaintiff,

v.    Adversary No. 06-1078 M

EVA GONZALES LOPEZ,

    Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the non-dischargeability action filed by SW Financial Services of Las Cruces, Inc. ("SW Financial") against Eva Gonzales Lopez, now known as Eva Gonzales. The Court held a trial on the merits following the partial reversal and remand by the Tenth Circuit Bankruptcy Appellate Panel ("BAP") of this Court's order granting Plaintiff's motion for summary judgment.[1] SW Financial seeks a determination that certain debt arising from two promissory notes executed by Defendant is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as a debt obtained by false pretenses.[2] The sole issue on remand is whether

---

[1] *See* Order and Judgment (Docket # 51).

[2] That section provides:
    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
        (2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by --
            (A) false pretenses, a false representation, or actual fraud, other

1

Defendant intended to defraud SW Financial when she executed two promissory notes in favor of SW Financial knowing that she would immediately turn the funds over to Joe Valdez, Defendant's former spouse and then officer and shareholder of SW Financial.[3]

Based on the testimony and evidence before the Court, the Court finds that there is sufficient circumstantial evidence from which to infer intent to defraud within the meaning of 11 U.S.C. § 523(a)(2)(A). Consequently, the debt at issue in this adversary proceeding is not dischargeable in Defendant's bankruptcy proceeding.

---

than a statement respecting the debtor's or an insider's financial condition.

    11 U.S.C. § 523(a)(2)(A).

[3]At trial, Defendant argued that because she did not complete the loan application, she made no representations to SW Financial; consequently, Defendant asserts that SW Financial failed to establish that Defendant made any false representation. This Court determined in its Memorandum Opinion (Docket # 37) that Defendant made false representations to SW Financial that she was the borrower and recipient of the loan funds by executing the notes in favor of SW Financial when she knew that she was obtaining the loans for the benefit of Joe Valdez. *See* Memorandum Opinion, p. 13. The Judgment and Order entered by the BAP did not reverse this Court's decision on that issue. Nor were the facts concerning this element different at trial. Thus, the determination that Defendant made a false representation under 11 U.S.C. § 523(a)(2)(A) is the law of the case. *See In re Straight,* 248 B.R. 403, 410 (10th Cir. BAP 2000)("Issues decided on appeal become the law of the case and are to be followed in all subsequent proceedings in the same case in the trial court . . . 'unless the evidence on a subsequent trial was substantially different . . . or the decision was clearly erroneous and would work a manifest injustice.'")(quoting *Woods v. Kenan (In re Woods),* 215 B.R. 623, 625 (10th Cir. BAP 1998)(quoting *White v. Murtha,* 377 F.2d 428, 431-32 (5th Cir. 1967), *reh'g denied,* 381 F.2d 34 (5th Cir. 1967)), *aff'd,* 173 F.3d 770 (10th Cir. 1999); *In re Integra Realty Resources, Inc.,* 354 F.3d 1246, 1259 (10th Cir. 2004)(law of the case doctrine "'applies to issues previously decided, either explicitly or by necessary implication.'")(quoting *Octagon Res., Inc., v. Bonnett Res. Corp. (In re Meridian Reserve, Inc.),* 87 F.3d 406, 409 (10th Cir. 1996)(further quotation omitted)). Similarly, the SW Financial's justifiable reliance on Defendant's representations has already been determined.

Case 06-01078-m    Doc 61    Filed 07/08/08    Entered 07/08/08 14:53:09 Page 2 of 9

FACTS AND DISCUSSION

Most of the facts relevant to this proceeding are not disputed. Defendant executed the following promissory notes and security agreements in favor of SW Financial: Promissory Note and Security Agreement dated July 5, 2001 in the amount of $4,630.16 ("Note 1"); Promissory Note and Security Agreement dated August 2, 2001 in the amount of $4,007.00 ("Note 2"); and Promissory Note and Security Agreement dated December 28, 2001 in the amount of $6,352.86 ("Note 3"). *See* Plaintiff's Exhibits 5, 6, and 7. Note 3 refinanced the outstanding balance of Note 2; Note 2 was paid in full from a portion of the proceeds of Note 3. Defendant entered into these loans at the request of her former husband, Joe Valdez, who was also at that time an owner and officer of SW Financial. Defendant agreed to enter into the loans with the understanding that Joe Valdez would repay them. Defendant received the proceeds from the loans and turned them over to Joe Valdez. Some payments were credited to the notes, but the source of the payments is not reflected on the account ledgers for the loans. *See* Defendant's Exhibits 8, 9 and 10. Defendant testified that Joe Valdez made the payments. The unpaid balances on Note 1 and Note 3 were ultimately charged off. *See* Defendant's Exhibits 9 and 11.

Sometime after Note 1 and Note 3 became delinquent, SW Financial discovered that Joe Valdez was responsible for making a series of allegedly improper loans on behalf of SW Financial. SW Financial, Joe Valdez, and Gene Lee entered into a Settlement Agreement that identifies twenty-one suspect loans. Note 1 and Note 3 are among the loans listed in the Settlement Agreement. The Settlement Agreement provides that Joe Valdez is liable for $144,177.00, representing the outstanding balance of the twenty-one loans, plus legal expenses. *See* Plaintiff's Exhibit 10. In partial payment of the amount due under the Settlement

3

Agreement, Joe Valdez sold his shares of common stock in several financial institutions, including his shares of stock in SW Financial, for the sum of $71,402.00. *Id.* No accounting of the application of the stock proceeds to the loans identified in the Settlement Agreement is in evidence. Gene Lee, the current president of SW Financial, testified at trial that the value of the stock redeemed as part of the Settlement Agreement was discounted and that none of the proceeds from the stock redemption were applied to the loan balances for Note 1 or Note 3.

At trial, Gloria Romero testified that when she contacted Defendant after the loans became delinquent, Defendant told her that she would contact Joe Valdez or that SW Financial should contact Joe Valdez regarding payment. Ms. Romero also testified that it was against SW Financial's general policy to make loans to family members or employees. Loans to immediate family members of employees of SW Financial required the approval of Gene Lee. Mr. Romero also confirmed that Defendant contacted SW Financial by telephone to request a payoff amount for one of the loans, and that by April of 2003 Defendant indicated that she knew it was her responsibility to repay the loans.

Defendant testified that she borrowed the money represented by Note 1, Note 2, and Note 3 for Joe Valdez, that she had an agreement with him that he would repay the loans, but that she knew if he did not repay the loans she would be responsible. Defendant also confirmed that upon receipt of the checks from SW Financial representing the proceeds from the loans, she cashed the checks and gave the proceeds to Joe Valdez. Defendant further testified that because Joe Valdez was the president of the company and asked her to borrow the money on his behalf she assumed it was ok. Although she testified at trial that she did not ask at the time of the loans whether SW Financial had any objection to the loan, her prior deposition testimony indicated

4

that she did question Joe Valdez about the propriety of the loans. Defendant did not initially list SW Financial in the statements and schedules filed with her bankruptcy petition. But after SW Financial filed a claim, she added SW Financial as a creditor and would have made a distribution to them as an unsecured creditor through her Chapter 13 plan had she been able to proceed under Chapter 13. Defendant did not file an objection to SW Financial's claim.

Intent to Defraud under 11 U.S.C. § 523(a)(2)(A).

Because a Defendant rarely admits an intent to defraud, a Plaintiff can satisfy the scienter element under 11 U.S.C. § 523(a)(2)(A) through circumstantial evidence from which the Court may infer the requisite intent to defraud.[4] The Court must consider the totality of the circumstances as of the time the representation was made to determine whether a debtor had a subjective intent to defraud the creditor.[5] The Court may logically infer an intent to deceive if the debtor knowingly or recklessly makes a false representation that the debtor knew or should have known would induce another to act.[6]

---

[4] *See Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1375 (10th Cir. 1996)(stating that fraudulent intent may be inferred based on the "totality of circumstances")(citations and internal quotations omitted)); *In re Abraham*, 247 B.R. 479, 483 (Bankr.D.Kan.2000)(stating that "[s]ince a promisor does not usually admit fraudulent intent, the plaintiff must prove circumstances substantial enough to support an inference that there was intent to defraud.")(citation omitted); *AT & T v. Herrig (In re Herrig),* 217 B.R. 891, 896 (Bankr.N.D.Okla. 1998)(noting that courts apply the "totality of circumstances" approach to determine intent because "rarely, if ever, will a debtor admit his or her intent to deceive while under oath.")(citation omitted)).

[5] *Young,* 91 F.3d at 1375 ("totality of circumstances" test). *See also, Mercantile Bank v. Canovas,* 237 B.R. 423, 428 (Bankr.N.D. Ill. 1998)("[T]he court must look at the totality of the circumstances in order to 'determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent.'")(quoting *In re Murphy,* 190 B.R. 327, 334 (Bankr.N.D.Ill. 1995)).

[6] *Hill v. Horst (In re Horst),* 151 B.R. 563, 568 (Bankr.D.Kan. 1993)(stating that "a representation made with gross recklessness as to its truth and with knowledge that it would

5

The BAP reversed and remanded the case on the issue of fraudulent intent, finding that Defendant's statements that she did not think she was doing anything wrong and that she understood that she would be required to repay the notes if Joe Valdez failed to do so created a genuine issue of material fact precluding summary judgment in favor of SW Financial. Upon consideration of the evidence and testimony at trial, including the Defendant's demeanor, the Court finds that the surrounding facts and circumstances support an inference of fraudulent intent within the meaning of 11 U.S.C. § 523(a)(2)(A).

At trial Defendant confirmed that she entered into the transaction knowing that she was really obtaining the loans on behalf of Joe Valdez. Her trial testimony that she did not question the loans was inconsistent with her deposition testimony that she had some concerns about the propriety of the loans. Defendant knew or should have known that by representing to SW Financial that she was the borrower when she intended to give the loan proceeds immediately to Joe Valdez, she was deceiving SW Financial as to the true nature of the transaction. Her statement that she understood at the outset that she would ultimately be responsible for repayment of the loans is belied in part by her response to SW Financial's collection efforts: instead of attempting to make arrangements for payment on the notes, she told SW Financial that it should contact Joe Valdez regarding payment. Because of her side agreement with Joe Valdez, she acted solely as the nominal party to the transaction and, in fact, had no present intention to repay the loans when she entered into them. The Court does not find credible

---

induce the creditor to make a loan fulfills the intent to deceive requirement for nondischargeability for fraud of false pretenses under § 523(a)(2)(A) (citing *In re Phillips,* 804 F.2d 930, 934 (6th Cir. 1986)) and confirming that the Tenth Circuit adopted a similar standard in *In re Black,* 787 F.2d 503, 506 (10th Cir. 1986) when construing § 523(a)(2)(B)); *Glucona Am., Inc. v. Ardisson (In re Ardisson),* 272 B.R. 346, 357 (Bankr.N.D.Ill. 2001).

Defendant's explanation that she did not think she was doing anything wrong in assisting Joe Valdez in receiving a loan. Why would Joe Valdez ask her to obtain a loan and give him the proceeds if he were able to take out the loan himself? Defendant either knew or should have known that the reason Joe Valdez asked for her assistance was because he was precluded from obtaining loans from SW Financial on his own behalf. She knowingly participated in this scheme. The Court, therefore, concludes that Defendant had the requisite intent to defraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

<u>Partial Payment of Indebtedness through Settlement between Joe Valdez and SW Financial</u>.

Defendant asserted at trial that the discounted stock redemption proceeds received under the terms of the Settlement Agreement with Joe Valdez should be applied proportionately to the outstanding balances of Note 1 and Note 3. SW Financial countered that the outstanding balance due under the Settlement Agreement far exceeds the amounts due under Notes 1 and Notes 3 and that it could elect to attempt collection from any source, provided it does not recover more than the total amount due under the Settlement Agreement. No accounting was provided to the Court documenting which loans SW Financial chose to apply the proceeds from the stock redemption. But because Defendant executed the notes and remains responsible for the outstanding balances thereunder, and because there is no evidence to suggest that SW Financial has recovered more than its actual losses, SW Financial was not required to apply a proportionate share of the proceeds it already received to the outstanding balances due under Note 1 or Note 2.[7]

---

[7]*Cf. Summit Properties, Inc. v. Public Service Co. of New Mexico,* 138 N.M. 208, 222, 118 P.3d 716, 730 (Ct.App. 2005)(discussing the collateral source doctrine and stating that "the

7

The Court previously entered an Order Granting Motion to Alter or Amend Judgment ("Order") (Docket # 46) providing that the debt at issue in this adversary proceeding in the amount of $7,702.68, plus interest at the rate of 19.99% per annum as provided in Note 1 and Note 3 from December 31, 2003, plus reasonable attorneys' fees not to exceed 15% of the remaining balance of the Notes, plus actual court costs, was non-dischargeable under 523(a)(2)(A). The Order was based upon the Court's Memorandum Opinion (Docket # 37) that was reversed by the BAP. Having conducted a trial on the merits following remand and determined that all elements of 11 U.S.C. § 523(a)(2)(A) have been satisfied, it is now appropriate to enter a second judgment determining only the nature of the debt.

## CONCLUSION

Based on the foregoing, the Court concludes that the debt at issue in this adversary proceeding is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law issued in accordance with Rule 7052, Fed.R.Bankr.P. The Court will enter a judgment consistent with this Memorandum Opinion.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: July 8, 2008

---

general rule is that a plaintiff may not recover more than his or her actual loss")(citing *McConal Aviation, Inc. v. Commercial Aviation Insurance Co.,* 110 NM 697, 700, 799 P.2d 133, 136 (1990)).

COPY TO:

| | |
|---|---|
| David P. Lutz | R. Trey Arvizu III |
| Attorney for Plaintiff | Attorney for Defendant |
| PO Drawer 1837 | PO Box 1479 |
| Las Cruces, NM 88004-1837 | Las Cruces, NM 88004 |