UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: EDWARD PARRA LOPEZ and
EVA GONZALES LOPEZ, formerly
known as Eva G. Valdez, formerly
known as Eva Gonzales Valdez,

No. 7-05-14734 ML

Debtors.

SOUTHWEST FINANCIAL
SERVICES OF LAS CRUCES, INC.,

    Plaintiff,

v.

Adversary No. 06-1078 M

EVA GONZALES LOPEZ,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING REMAND

THIS MATTER is before the Court following the remand by the Tenth Circuit Bankruptcy Appellate Panel ("BAP") of Defendant Eva Gonzales Lopez's appeal of this Court's Memorandum Opinion and Judgment determining that the debt at issue in this adversary proceeding was non-dischargeable under 11 U.S.C. § 523(a)(2)(A).[1] The BAP remanded the matter to this Court with instructions to make findings based on the evidentiary record regarding

---

[1]That section provides, in relevant part:
    A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
    (2) for money . . . to the extent obtained by
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]
11 U.S.C. § 523(a)(2)(A).

1

the non-intent elements of 11 U.S.C. § 523(a)(2)(A) and the Defendant's agency defense.[2] After review of the evidentiary record, the Court finds that all elements under 11 U.S.C. § 523(a)(2)(A) have been satisfied, and enters the following findings of fact and conclusions of law in accordance with Rule 7052, Fed.R.Bankr.P.

DISCUSSION

Plaintiff Southwest Financial Services of Las Cruces, Inc. ("SW Financial") claims that a debt arising from certain unpaid promissory notes executed by Defendant in favor of SW Financial is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). To declare a debt non-dischargeable under § 523(a)(2), SW Financial must demonstrate by a preponderance of evidence that "[t]he debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance

---

[2]There have been two appeals in this adversary proceeding. Defendant first appealed the Memorandum Opinion and Judgment entered on May 4, 2007 which granted Plaintiff's motion for summary judgment. *See* Docket No. 37 and Docket No. 38. The BAP remanded the matter to this Court, finding that fact issues regarding Defendant's intent to defraud precluded summary judgment. *See* Docket No. 51. Following a trial on the merits, the Court entered a second memorandum opinion and judgment on July 8, 2008 ("Second Memorandum"), concluding that the evidence supported a finding of fraudulent intent, but making no further fact findings as to the remaining elements under 11 U.S.C. § 523(a)(2)(A). *See* Docket No. 61 and Docket No. 62. Following the Plaintiff's appeal of the Second Memorandum, the BAP concluded that its disposition of the first appeal did not affirm this Court's determination on summary judgment as to the non-intent elements under 11 U.S.C. § 523(a)(2)(A) because it did not expressly decide any of those issues. *See* Order Remanding for Further Findings, Docket No. 72. The only element contested by Defendant in response to Plaintiff's motion for summary judgment was the issue of intent; this Court granted summary judgment as to all elements under 11 U.S.C. § 523(a)(2)(A) based on the undisputed facts as conceded by Defendant.

2

was [justifiable]³; and the debtor's representation caused the creditor to sustain a loss."⁴

The evidence at trial established that Defendant executed certain promissory notes in favor of SW Financial; that Defendant entered into these loans at the request of her former husband, Joe Valdez, who was also at that time an owner and officer of SW Financial; that it was the policy of SW Financial not to loan money to its employees or to relatives of its employees; that Defendant agreed to enter into the loans with the understanding that Joe Valdez would repay them; that Defendant received the proceeds from the loans and immediately turned them over to Joe Valdez; and that the promissory notes were not repaid in full. These facts are sufficient to establish all elements under 11 U.S.C. § 523(a)(2)(A). The Court already determined in its Second Memorandum that the intent-element of 11 U.S.C. § 523(a)(2)(A) was satisfied, and the BAP has not directed the Court to revisit this issue on remand. The Court will address the remaining elements in light of the evidence presented at trial.

### *False Representation*

Defendant confirmed at trial that she entered into the transaction knowing that she was really obtaining the loans on behalf of Joe Valdez. Defendant made a false representation to SW Financial when she executed the promissory notes that represented to SW Financial that she was borrowing funds, when, in fact, she obtained the funds on behalf of Joe Valdez. Defendant argued at trial that because her dealings were solely with Joe Valdez, she did not make any representations to SW Financial as to the loans or how she planned to use the proceeds from the

---

³*Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d. 351 (1995) changed the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable."

⁴*Fowler Bros v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996).

3

loans. But by executing the promissory notes in favor of SW Financial, she was representing to SW Financial that she was the borrower and that she promised to pay the notes according to their terms. In fact, at the time she entered into the promissory notes she knew that she would give the proceeds to Joe Valdez and that her arrangement with Joe Valdez was that he, not she, would make the payments. Based on these facts the Court finds that Defendant had no present intent to pay, and made a misrepresentation to SW Financial in obtaining the loans.[5]

*Justifiable Reliance*

Defendant argues that SW Financial could not have justifiably relied on her representations in making the loan because Mr. Valdez knew of the scheme all along and was an officer and manager of SW Financial at the time the loans were made. Defendant further argues that because Mr. Valdez was Plaintiff's agent at the time of the transactions, Mr. Valdez's knowledge must be imputed to SW Financial, so that SW Financial cannot now sustain its claim against Defendant. This Court disagrees.

Under agency principles, a principal is liable for frauds and misrepresentations of its agent, even though the principal has no knowledge of such representations, when the agent is

---

[5]*Cf. Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. BAP 1998) ("An implied representation of intent to repay will be fraudulent if the credit card issuer demonstrates that at the time the debtor used a credit card he or she had no intent to repay the debt incurred."); *Mercantile Bank v. Hoyle (In re Hoyle),* 183 B.R. 635, 638 (Bankr. D. Kan. 1995)(stating that the "purchase of goods on credit by a debtor who does not intend to repay . . . constitutes a false representation" within the meaning of 11 U.S.C. § 523(a)(2)(A))(citation omitted); *Bombardier Capital, Inc. v. Dobek (In re Dobek),* 278 B.R. 496, 507 (Bankr. N.D. Ill. 2002)(finding that a debtor who purchased a motorcycle on credit for her boyfriend and never intended to make payments on the loan misrepresented her role in the transaction to the lender, and that such misrepresentations constituted false pretenses under 11 U.S.C. § 523(a)(2)(A)).

4

acting within the scope of his authority or employment.[6] Here, SW Financial is the principal, and Mr. Valdez, as its officer, is SW Financial's agent. The evidence at trial strongly suggests that Mr. Valdez concocted a scheme to obtain funds from SW Financial for his own use, and that Defendant assisted Mr. Valdez in perpetuating the fraud. Under agency principles, Mr. Valdez' fraud would be imputed to SW Financial. However, agency principles also direct that "'unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.'" *The William W. Barney, M.D.P.C. Retirement Fund v. Perkins (In re Perkins),* 298 B.R. 778, 788 (Bankr.D.Utah, 2003)(quoting RESTATEMENT (SECOND) OF AGENCY § 387 (1968)). "An agent's duties undoubtedly extend to refraining from self-dealing transactions which have the potential to benefit the agent at the expense of the principal." *Id.* at 788-789 (citation omitted). By orchestrating a scheme whereby Mr. Valdez used Defendant to obtain loan proceeds for his own benefit, he breached his duty as the agent of SW Financial. Inasmuch, SW Financial would not be precluded from pursuing an action against Mr. Valdez. Likewise, SW Financial may pursue Defendant based upon her participation in Mr. Valdez's scheme. SW Financial's imputed knowledge of its agent's fraud does not, therefore, preclude SW Financial from recovering from Defendant, provided it can demonstrate that it justifiably relied on Defendant's

---

[6]*See Amen v. Black,* 234 F.2d 12, 20 (10th Cir. 1956)(acknowledging the "familiar and universally accepted rule that a principal is liable for the frauds and misrepresentations of his agent within the scope of his authority or employment even though he had no knowledge of such representations."); *Davis v. Melcher (In re Melcher),* 319 B.R. 761, 770 (Bankr.D.D.C. 2004)(noting, generally, that "[u]nder agency law principles of nonbankruptcy law, a principal is charged with claims for fraud arising from his agent's false misrepresentations if the agent was authorized to act on the principal's behalf.")(citing RESTATEMENT (SECOND), AGENCY, § 257).

5

misrepresentations.

The evidence at trial established that SW Financial relied on the identity of Defendant as listed in the promissory notes when making the loans. Gloria Romero testified at trial that it was SW Financial's policy not to loan to family members of its employees, and that such a loan required special approval from someone in the company with higher authority, such as Gene Lee. She further testified that Mr. Valdez was responsible for getting Mr. Lee's approval on a loan to a family member of an employee. Mr. Lee testified that if SW Financial had known Mr. Valdez would receive the proceeds of the loans to Defendant, it would not have approved the loans. Based on the testimony of Ms. Romero and Mr. Lee, the Court finds that SW Financial's reliance on Defendant's representation that the loans were for her was justifiable. There is no evidence that SW Financial should have been aware that Defendant was not the real borrower in the loan transaction.[7]

### *Defendant's Misrepresentation Caused Plaintiff to Sustain a Loss*

Because Defendant did not repay the loans in full, Plaintiff sustained a loss. The Court previously rejected Defendant's argument regarding partial satisfaction of the indebtedness as a result of the SW Financial's settlement with Mr. Valdez. *See* Memorandum Opinion, p. 7.

Based on the foregoing, the Court concludes that Plaintiff has established all elements of 11 U.S.C. §523(a)(2)(A) by a preponderance of the evidence and that the debt at issue is non-

---

[7]*See FDIC v. Roberti (In re Roberti)*, 201 B.R. 614, 628 (Bankr. D. Conn. 1996) (finding justifiable reliance by bank who loaned money to non-existent corporation on president's signature because bank could "justifiably assume that the defendant, as president of the corporate borrower, knew the name of that entity and was therefore justified in believing the materially false statement that the name of the intended corporate borrower was 'Westledge/Boyer Realty II, Corp.'").

6

dischargeable as having been procured by Defendant's false representations.

The Court will enter a judgment consistent with these findings of fact and conclusions of law.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: May 8, 2009

COPY TO:

David P Lutz
Attorney for Plaintiff
PO Drawer 1837
Las Cruces, NM 88004-1837

R Trey Arvizu, III
Attorney for Defendant
PO Box 1479
Las Cruces, NM 88004-1479